Harris, J.,
delivered the opinion of the Court.
At the February Term, 1852, of the Chancery Court at Rogersville, a decretal order was made in the cause of McMinn’s Legatees vs. Phipps, directing the sale of a tract of 417 acres of land in Fayette county, Tennessee, by the Clerk and Master, or an agent. The sale was made in pursuance of said order on the 15th of May, 1852, and H. A. Taylor, became the purchaser for the sum of $1,668, of which $556, was paid, and a note and security given for the balance. All of which was reported by the Clerk and Master to the November Term of said Court; which report was, at’ said November Term, confirmed by the Court, and the Clerk and Master ordered to collect and distribute the balance of the purchase money. At the November Term, 1853, the purchase money having all been paid, Mr. Taylor, by his solicitor, applied to the Court to vest the title to said tract of land in him.
*198 Thereupon complainants’ counsel produced two letters from one L. M. Scott, and suggested that there was a fraudulent combination and collusion in the purchase of said land, and upon this suggestion alone, the Chancellor made an order directing the solicitor of complainants’ to take proof upon the question of fraud. Much proof was taken pro and con. which showed substantially that Taylor, Degraffenried and Springfield, all owned lands adjoining the land that was sold, and each of them desired a portion of it, and it was agreed that Taylor should purchase the land for them jointly, and that they would divide it between them so as to suit the convenience of each. There is also proof showing that John E. Douglass desired the gum and poplar timber that was upon the land for the purpose of sawing lumber, and that he had promised that, if the land was offered at public sale he would make it bring $4 per acre, — that Taylor told him he would make it bring that amount, — that he cared nothing about such timber as Douglass wanted, and if he made the purchase, so far as he was concerned, he would give him the timber, and he had no doubt Springfield would do the same, that there was no agreement, or understanding that he was not to bid against them and. they were to give him the timber. There was also proof that they and others in the neighborhood had given him timber of the same description off of their own lands.
There is also much proof as to the value of the land, the weight of which is that it sold for a fair-price.
Upon this proof the Chancellor set the sale aside, and; *199 ordered a re-sale of the land. From which order Taylor appealed in error to this Court.'
Two - questions are presented for our consideration:
1st. Was this such a fraudulent combination to avoid competition, as will vitiate the sale ? And,
2d. If so, can the question be raised upon a mere suggestion, without proceeding by bill, to which the purchaser would have the right to put in an answer, so as to admit the facts if true, or make up an issue upon the charge of fraud ?
Upon the first proposition there can be no doubt, that if the land had been divided into three lots and sold separately, and Mr. Taylor had desired to purchase lot No. 1, Mr. Springfield lot No. 2, and Mr. Degraffenried No 3, and they had agreed among themselves, that neither should bid against the other for the lots they desired to purchase respectively, such an agreement would have been a fraudulent combination to avoid competition, and the sales would have been voidable. 1 Story’s Eq. Jur. sec. 293, 2 Law Lib’y, L. & Eq. 929. But such is not this case. Here, the whole tract was to be sold together, and each of the parties wanted certain portions of it, but neither wanted to purchase it all; hence they entered into an agreement to ■ purchase jointly and to make a division among themselves, so as to . suit the convenience of each.
Such an agreement is not a fraudulent combination to stifle competition, nor is it against public policy, or strict morality.
In the case of Smith, et al. vs. Greenlee, 2 Dev. Law Rep. 229, Chief Justice Henderson, in delivering *200 the opinion of the Supreme Court of North Carolina, lays down this general principle :
“ But it should be clearly understood, that it is not intended to intimate an opinion, that persons may not associate together, and unite in their biddings from any other cause or motive than that of destroying, stifling, or paralyzing competion. Persons may unquestionably unite in their biddings under a great- variety of circumstances. As where the whole article for any reason, does not suit the individuals of the association, as being of more cost than one would wish to purchase, or where it consists of parts, some suitable to one, and, some to others of the association,” &c.
This principle we think, fully covers the case before the Court, and is sustained by numerous authorities.
In the case of Morton, Smith & Co., vs. Sloan, 11 Humph. 278, which was an application, by petition, to set aside a sale under a decree in Chancery, before confirmation, upon the ground of mistake, though the Court set the sale aside, the mistake being clearly made out, and that the parties were misled thereby, yet, His Honor, Judge Geben, in delivering the opinion of the Court, at page 281, says, “We do not think that it is for the interest of pai’ties that the sale of the Master should be set aside for slight causes. Such a practice would tend to deter bidders, as they would have no reliance that they were to get the property which might be struck off to them. There should, therefore, in every case, where such sale is set aside, be special circumstances rendering it inequitable to confirm the sale.”
*201 “ In ordinary sales at' auction, or by private agreement, the contract is complete when the agreement is sealed: but a different rule prevails in sales before a Master; in such cases the purchaser is not considered as entitled to the benefit of his contract till the Master’s' report of the purchaser’s bidding is absolutely confirmed.” 2 Dan. Ch. Pr. 909.
“ The proper time for opening the biddings is before the Master’s report of the sale has been absolutely confirmed; after that, increase of price alone, however large, is not sufficient to induce the Court to grant the application, although it is a strong auxiliary argument when there are other grounds.” Ib. 928.
Upon the present application to set the sale aside and open the biddings, we have seen that there was no such combination to stifle or suppress competition in bidding as would amount to a fraud and vitiate the sale, and there has no person come forward and proposed to give a better price for the land; we therefore think, there is no sufficient cause shown, to au-thorise the Chancellor to set the sale aside, and more especially, after the confirmation of the sale.
But if this had been a proper case, could the application be made upon mere suggestion or motion? Or should not the grounds upon which the application is founded, have been set forth in the original bill ? We are aware of no case where this question has been directly determined in Tennessee. The case of Morton, Smith & Co., vs. Sloan, 11th Humph. 278, already noticed, and the case of Childress vs. Hurt, 2 Swan, 487, were both cases to set sales aside and open the biddings; and though in each case, before *202 confirmation, yet the applications were by petition. But in a case like the present, where the sale has been confirmed at a previous term of the Court, and all the consideration money paid, it is in the nature of, and indeed is, an application to the Court to rescind a contract; and although the purchaser is a quasi party before the Court, yet we think in such a case, it is necessary, by original bill, to set out the grounds upon which the application is made, that the party may have an opportunity of answering and admitting the facts or making an issue. We think therefore, for both of these reasons, the Chancellor erred in setting aside the purchase, and we reverse the decree, and order that a decree be rendered vesting the title in fee simple, to the land, in the purchaser.